year 1918. However, as far as the evidence shows, the shed was still in use at the end of the year 1918 and was serving the purpose for which it was acquired. Apparently, its value in terms of use to the taxpayer had not diminished at the end of the year 1918, and, if we were to hold, which we do not, that the shed was acquired for the production of articles contributing to the prosecution of the World War, the taxpayer is nevertheless not entitled to an allowance for the amortization of the cost thereof in the year 1918.

With reference to the allowance to which the taxpayer is entitled for the exhaustion, wear and tear of its rafting gear in the years 1917 and 1918, we are of the opinion that the useful life of that property was not to exceed two years and that the allowance should be computed on that basis.

The only other question presented by the record herein relates to the reserves set up by the taxpayer on its books at the close of the taxable years 1916, 1917, and 1918, to cover freight charges on products that had been shipped but for which freight bills had not been received. Although merely estimates, these reserves were included in the amounts which the taxpayer deducted from gross income in the year 1918, and the effect thereof was that, in computing its net income for the years 1917 and 1918, the taxpayer deducted on account of freight charges $19,580.07 more for the year 1917, and $27,192.56 less for the year 1918, than the amount of such charges actually paid or incurred in those years. These reserves represented an indefinite liability, which could not be determined until the freight was actually paid, and they should not have been deducted by the taxpayer in computing its net income for the years 1917 and 1918. Only the amounts of freight charges actually paid or incurred in those years should have been deducted. The taxpayer's income for the year 1917 should therefore be increased by $19,580.07, and that for the year 1918 should be decreased by $27,190.56.

---

## APPEAL OF JEWETT & CO.

Docket No. 5416. Submitted December 2, 1925. Decided February 18, 1926.

*Barry Mohun* and *Benjamin Mahler, Esqs.*, for the taxpayer.
*John W. Fisher, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits tax for the calendar years 1919, 1920, and 1921, in the amounts of $157.20, $1,526.10, and $237.31, respectively, arising from adjustment of deductions for exhaustion, wear and tear, and

obsolescence of patterns. The taxpayer originally claimed a deduction of 3½ per cent of the total sales for the year, which was disallowed by the Commissioner, who computed the deduction at 6 per cent upon cost, plus additions during the years here involved. At the hearing the taxpayer, admitting the correctness of the Commissioner's method, contended that its patterns, while having a physical life of many years, become obsolete within nine years.

### FINDINGS OF FACT.

Taxpayer is a New York corporation engaged in the manufacture and sale of wood, coal, and gas stoves, with principal office and place of business at Tonawanda.

As a result of the method of determining the deduction for exhaustion, wear and tear, and obsolescence of patterns, by the National Association of Stove Manufacturers, the taxpayer computed this deduction during the years here involved and those prior thereto upon the basis of 3½ per cent of the total sales for the year. For certain prior years the Commissioner allowed the deductions claimed, but for the taxable years changed the method of determining the deduction to 6 per cent of the cost and adjusted the income and the invested capital accordingly.

By reason of the constant change in designs and styles of stoves to meet the public demand, patterns in use for a period of from eight to twelve years are only used for the manufacture of repair parts and, to a minor extent, in the manufacture of certain stoves, the designs and styles of which have been changed. The average useful life of patterns used by the taxpayer is ten years, and the deduction for exhaustion, wear and tear, and obsolescence should be computed upon the basis of 10 per cent of the cost, plus additions.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact. Final determination will be settled on 10 days' notice, under Rule 50.

---

### APPEAL OF W. F. CHILDS & CO.

Docket No. 4127. Submitted July 16, 1925. Decided February 18, 1926.

*George E. Frazier, Esq.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

There is involved in this appeal the determination of a deficiency in income tax for the year 1922 in the sum of $1,735.09. The question